***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commission REVERSES the holding of Deputy Commissioner Hoag and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the parties at all relevant times.
3. The carrier on the risk is Key Risk Management Services.
4. The date of plaintiff's alleged injury by accident was August 17, 1999.
5. Plaintiff's average weekly wage at all relevant times was $781.99, yielding a compensation rate of $521.35.
6. The parties stipulated into evidence the following:
a. I.C. Forms No. 19, 61, 33, 33R, 22, 18
b. Recorded statement of plaintiff
 c. I.C. Order excusing case from mediated settlement conference
 d. Plaintiff's Response to Defendants' First Set of Pre-Hearing Interrogatories
 e. Medical records of Paul L. Saenger, M.D., Blue Ridge Bone Joint Clinic (5 pp.)
f. Open MRI, (1 page)
g. Records from ProMed Asheville (6 pp.)
 h. Medical records from Thoms Rehabilitation Hospital (7 pp.).
7. The issues to be determined by the Commission are:
 a. Did plaintiff sustain a compensable injury by accident to his right arm while in the course and scope of his employment with defendant-employer?
b. If so, to what benefits is plaintiff entitled?
8. The deposition of Dr. Paul L. Saenger is a part of the evidentiary record in this case.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing of this matter, plaintiff was fifty-six (56) years old. Plaintiff began working with defendant-employer in 1994.
2. Plaintiff held the position of directional drilling rig foreman with defendant-employer. Plaintiff's regular job duties required him to operate a vemeer navigator directional drilling rig. During its normal operations, the rig equipment would automatically, and without any necessity for physical effort by plaintiff, pick up, load, and utilize boring rods approximately 10 feet long and 2-1/2 inches in diameter, weighing approximately 70-80 pounds. These hollow rods are grabbed by mechanical arms, picked up, and placed in sequence to be pushed into a trench.
3. Sometimes the mechanical arms of the vemeer do not pick up the rod precisely and this will occasionally hang up. When this happens, the machine operator must reach down and shake or slide the rod back into place. During the three years prior to the date of the alleged accident, plaintiff had performed this task only two or three times per year. On each such occasion, the task of replacing the rod took only ten seconds to complete. Plaintiff knew exactly what he was supposed to do and did not have to stop the machine, call for help, or notify his superintendent before attempting to free the rod.
4. On August 17, 1999, while operating the drilling rig, plaintiff noticed that a rod had become hung up. Plaintiff reached back with his right arm, grasped the rod, and pulled on it. While doing this, plaintiff felt an immediate sharp and tearing pain in his right arm at the elbow area. Unlike previous instances in which plaintiff had manually corrected the direction of the rod, the rod was stuck tighter than usual.
5. The next morning, plaintiff's co-workers called secretary Mindy Harwood with defendant-employer and notified her of plaintiff's right arm injury. A few days later, Ms. Harwood referred plaintiff to ProMed medical clinic.
6. On August 23, 1999, plaintiff presented to ProMed complaining of right elbow pain for the past six days with an onset at work while he was pushing a heavy metal rod on his machine. The ProMed physician noted that plaintiff, on examination, had forearm tenderness over the medical epicondyle of the right elbow. The physician diagnosed plaintiff with a muscle/tendon strain of the right elbow. Plaintiff was given an arm sling and the work restrictions of no use of his right elbow or upper arm. Plaintiff was to revisit the clinic in approximately three days.
7. On September 7, 1999, plaintiff was evaluated by Dr. Paul Saenger, an orthopedic surgeon, in Asheville, North Carolina. Dr. Saenger's notes revealed that plaintiff's problem commenced at work while lifting an eighty (80) pound rod with his arm in a flexed position. Dr. Saenger diagnosed plaintiff as having an anterior soft tissue strain without significant disruption of the biceps structures. Dr. Saenger recommended work restrictions of no lifting with his right arm greater than five pounds and no forceful bending, repetitive use, or use of vibratory tools with his right arm. Dr. Saenger also recommended physical therapy which was undertaken at Thoms Rehabilitation Hospital.
8. Plaintiff subsequently had an MRI scan. The results were consistent with inflammation or reactive change in the medical collateral ligament and in the pronator teres without a definite ligament tear.
9. On November 19, 1999, plaintiff returned to Dr. Saenger. New x-rays of plaintiff's elbow taken on that date revealed that plaintiff had developed heterotopic ossification around the distal end of the biceps tendon.
10. On October 10, 2000, Dr. Saenger found plaintiff at maximum medical improvement for his arm injury and gave him a thirty (30) percent permanent partial disability rating of the right upper extremity due to significant limits in rotation of his wrist; however, the Commission finds that this rating is not in accordance with Industrial Commission Rating Guide which provides for a 5-20% permanent impairment rating of the hand for diminished pronation and supination of the wrist. The Commission finds that plaintiff's loss of right wrist rotation constitutes a 20% loss of use of his right hand.
11. It was Dr. Saenger's opinion that plaintiff's August 17, 1999 incident in which he lifted a heavy rod with the flexor mechanism of his arm or his elbow and forearm caused strain to his soft tissues and his resulting condition of heterotopic ossification.
12. The task of replacing a dropped rod was a routine and ordinary part of plaintiff's job functions as a directional drilling foreman with defendant-employer. However, the fact that on August 17, 1999, the rod was stuck tighter than usual when plaintiff had previously performed the same action constituted an unusual event that was out of the ordinary and not a part of plaintiff's customary work duties. As plaintiff's normal working conditions were interrupted by this unexpected occurrence while performing his work tasks, plaintiff incurred a compensable injury by accident thereby entitling him to all benefits available under the Workers Compensation Act.
13. Plaintiff was out of work from August 23, 1999 through September 24, 1999 due to his work-related injury by accident. Defendant-employer continued plaintiff's salary during this period. Plaintiff returned to work on September 25, 1999 earning the same average weekly wage as he did prior to his August 17, 1999 injury by accident.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
1. Plaintiff sustained an injury by accident while in the course and scope of his employment with defendant-employer on August 17, 1999, and he is entitled to receive benefits under the North Carolina Workers' Compensation Act. N.C.G.S. § 97-2(6).
2. Plaintiff is entitled to receive temporary total disability compensation from August 23, 1999 through September 24, 1999, the time during which he was disabled due to his injury by accident. N.C.G.S. § 97-29.
3. Plaintiff is entitled to received medical compensation for all treatment rendered pursuant to his compensable injury by accident necessary to effect a cure, give relief, and/or lessen plaintiff's period of disability. N.C.G.S. § 97-25.
4. Plaintiff is entitled to receive compensation for a 20% permanent partial impairment to his hand sustained as a result of his compensable injury by accident. N.C.G.S. § 97-31(12).
5. Defendants are entitled to a credit for all wages paid to plaintiff during his period of disability, August 23, 1999 through September 24, 1999, due to his injury by accident. N.C.G.S. § 97-42.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation for the period of August 23, 1999 through September 24, 1999 in the amount of $521.35 per week. This amount has accrued and shall be paid in a lump sum to plaintiff subject to a credit for wages paid to plaintiff during this period and an attorney's fee approved for plaintiff's counsel in Paragraph 4.
2. Defendants shall pay plaintiff permanent partial disability compensation for a period of 40 weeks in the amount of $521.35 per week. This amount has accrued and shall be paid in a lump sum to plaintiff subject to a credit for wages paid to plaintiff between August 23, 1999 and September 24, 1999 and an attorney's fee approved for plaintiff's counsel in Paragraph 4.
3. Defendants shall pay for all medical treatment plaintiff received related to his compensable injury by accident that was necessary to effect a cure, provide relief, and/or lessen his period of disability.
4. An attorney's fee for plaintiff's counsel is hereby approved in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff in Paragraphs 1 and 2 above. This amount shall be deducted from the compensation due plaintiff and paid directly to plaintiff's counsel by defendants.
5. Defendants shall pay the costs due the Commission.
This the ___ day of August 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER